# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | 3:19-CV-572-MMD-CLB |
| Plaintiff, | **Default Judgment of Forfeiture and Final Judgment of Forfeiture** |
| v. | |
| $128,320.00 in United States Currency, | |
| Defendant. | |

## I. FACTS

On May 30, 2019, at approximately 10:48 A.M., McHugh was driving a 2012 black Dodge Ram pickup truck bearing a Michigan license plate on Interstate 80 westbound in Washoe County, Nevada. McHugh was the sole occupant of the vehicle.

A Washoe County Sheriff's Office (WCSO) officer, who was also travelling westbound in his patrol vehicle, observed the Ram crossing over the fog line twice within a short time and following another vehicle at approximately one-and-one-half car's lengths.

The WCSO officer initiated a traffic stop for the following violations of Nevada law: Failure to Maintain Lane and Following Too Closely.

The WCSO officer approached the Ram, made contact with McHugh, advised him of the reasons for the traffic stop, and requested McHugh's driver's license and vehicle registration.

McHugh volunteered that he lived in Auburn, California and worked as a wind-turbine technician.

McHugh had a Washington driver's license, and Julie McHugh (identified as McHugh's wife) was the owner of the vehicle, as listed on the Michigan registration.

McHugh stated that he maintained a Washington driver's license to avoid California state taxes and that the Michigan address listed on the vehicle registration was his mother-in-law's address.

The WCSO officer engaged McHugh in conversation. McHugh stated that he was on his way back home to Auburn after working in Oklahoma for approximately two-and-a-half to three months. According to McHugh, he drove rather than flew because he needed to transport work tools to and from his work site. The WCSO officer returned to his vehicle to complete a wants-and-warrants check. While doing so, the officer learned that the Ram had been in California and Kansas approximately two-and-a-half to three months earlier.

The WCSO officer returned to the Ram and notified McHugh that he (the officer) would be issuing a warning citation. The officer asked McHugh about his travels while in Oklahoma, and McHugh stated that he was in Oklahoma for the entirety of his stay there except for visiting California by plane. According to McHugh, the Ram had not been in California for "a while."

When asked by the WCSO officer whether the Ram contained any illegal drugs or large amounts of currency, McHugh responded that it did not.

The WCSO officer asked McHugh to exit the Ram while the officer completed the warning citation back at his patrol vehicle. McHugh refused to do so. At that juncture, the officer called for backup. The officer advised McHugh that he wished to speak with him further outside of the vehicle, and McHugh still refused to leave the vehicle, asserting that he felt that there was no reason to exit and that he was responsible for certain tools in the back of the Ram. The WCSO officer remained with McHugh at the Ram while awaiting backup.

Shortly afterward, backup officers arrived on scene. McHugh again refused to exit the vehicle, but he relented and complied when advised that his continued refusal would constitute obstruction.

///

///

One of the backup officers deployed his certified, reliable canine—trained to detect the odor of illegal drugs. The canine alerted to the presence of the odor of illegal drugs coming from the Ram.

Based on the positive alert, officers conducted a probable-cause search of the Ram.

Inside the Ram's passenger compartment, officers found a new Mission Darkness Faraday Bag. Inside the bag, officers located sealed plastic bags containing a substantial cache of United States currency. Some of the currency was found bagged in an additional layer of plastic (double bagged). Most of the currency was rubber-banded into small bundles that, in turn, were grouped into larger rubber-banded bundles. Officers also found empty plastic bags and additional rubber bands inside the Mission Darkness Faraday Bag. Based on his training and experience, the WCSO officer believed that the packaging of the currency was consistent with illegal-drugs trafficking. The WCSO officer estimated that the currency totaled at least $50,000.

During the search, officers also located: (a) two large Rubbermaid hard-sided storage crates with weather stripping affixed around the sealing seams and latches with holes for the insertion of padlocks; (b) three unlocked Master padlocks; (c) two empty large duffel bags, one black and the other blue; (d) numerous charge cards in McHugh's name, including credit cards, store cards, and a Wells Fargo Bank debit card; and (e) a May 23, 2019, receipt from Les Schwab Tires in Sacramento, California for service on the Ram, indicating that the work was authorized by McHugh and displaying a signature.

Officers contacted a special agent from the DEA, who communicated that he would report to the scene for further investigation.

While awaiting the arrival of the DEA agent, officers engaged McHugh in conversation. McHugh stated that he had won the currency from gambling in Reno. When advised that large winnings would be documented by the casinos (thereby creating a paper trail for McHugh's money), McHugh stated that he won the money over time.

At approximately 11:50 A.M., the DEA agent arrived on scene, engaged McHugh in conversation, and completed a Currency Seizure Questionnaire (CSQ).

When conversing with the DEA agent, McHugh reiterated that he was en route from Oklahoma, where he had been working on wind turbines, to California, where he lived. As noted, the search of the Ram uncovered a receipt from Les Schwab Tires indicated that McHugh had been in California, rather than Oklahoma, with the Ram one week before the traffic stop.

The DEA agent asked McHugh why he was travelling with such a large sum of currency on hand rather than securing it in a bank and withdrawing it as needed or using a safer, less-cumbersome transport method, such as a certified monetary instrument. McHugh replied that he did not trust banks. As noted, the search of the Ram uncovered numerous bank-issued charge cards in McHugh's name, including a debit card from Wells Fargo Bank. McHugh acknowledged to the DEA agent that he maintained checking and savings accounts with Wells Fargo Bank and charge accounts with Chase Bank and Merrick Bank.

McHugh stated that the source of the currency was a combination of job earnings, the proceeds of a house sale, and gambling winnings. McHugh stated that he was a "huge" gambler. When the DEA agent indicated that casinos record large-winnings transactions, McHugh asserted that he had won the currency in small increments that were under the reporting threshold.

At the end of the DEA agent's interview, the agent advised McHugh that he (the agent) believed that McHugh was engaged in illegal-drugs trafficking and that the currency was connected to that enterprise. In response, McHugh stated: "It doesn't take a rocket scientist to figure out what I'm doing." Based on the context in which that statement was made and McHugh's demeanor when making that statement, the DEA agent understood it as an acknowledgment of illegal-drugs trafficking.

McHugh consented to a search of his LG cellular telephone. An examination of the phone uncovered numerous items, including:

///

///

4

a. A May 4, 2019, photo-and-map log, connected with a photograph of what appeared to be a large plastic bag filled with buds of marijuana, showing a location of Citrus Heights, California;

b. A May 10, 2019, photo-and-map log, connected with a photograph, showing a location of Indianapolis, Indiana;

c. A photograph, shared by McHugh on May 20, 2019, of what appeared to be a plastic bag filled with buds of marijuana;

d. A text-message exchange, from May 21, 2019, between McHugh and "Chicago," in which (1) "Chicago" stated: "Everyone was short. A oz or more. U guys are going to have to start weighing the shit. I'm losing money left and right"; and, then, (2) McHugh stated: "We said they're wait all the indoors weed and pulled for to the side it made the guy add to them the turkey bags that were used we're about half the weight. It's possible to scale used was wrong also these were so fresh we may have lost some weight when they dried up if we get any more fresh ones will make the guys add an extra ounce";

e. A received text message, from May 21, 2019, stating: "We weighed the indoors";

f. Received text messages, from May 21, 2019, stating: "I know mine weighed" and "The only thing I can think of is that they were fresh and dryer up";

g. A sent text message, from May 21, 2019, in which McHugh stated: "Blackberry kush";

h. A sent text message, from May 22, 2019, in which McHugh stated: "Your total is 62700 – 2000 – 1650 = 59050";

i. A photograph, shared by McHugh on May 23, 2019, of what appeared to be two or three buds of marijuana on a wooden surface;

///

j. A photograph, shared by McHugh on May 23, 2019, of what appeared to be two large buds of marijuana being held in a hand;

k. Sent text messages, from May 23, 2019, in which McHugh stated to "Julie" that he was "[h]aving dinner in Chico" and that "Jimmy's on his way over";

l. A received text message, from May 23, 2019, in which "Jimmy" said "[m]y list" and attached a photograph of a piece of paper containing the following handwritten items:

    i. "<u>33 Total</u>";

    ii. "<u>J-List</u>";

    iii. "15 Girl Scout Cookies      1750";

    iv. "1 Gorilla Glue      1750";

    v. "1 OG Kush      1500";

    vi. "3 Candy land      1950"

    vii. "4 Platinum Bubbas      1950"

    viii. "6 Glue X Girl Scout Cookies      1650"; and

    ix. "3 Platinum OG      1950";

m. A sent text message, from May 28, 2019, in which McHugh stated to "Julie": "Made it to indy";

n. A text-message exchange, from May 28, 2019, between McHugh and "Joe Tommys Friend," in which (1) McHugh stated: "Hey Joe it's Brad if you're still willing to work with us we're looking at Friday"; then (2) "Joe Tommys Friend" stated: "Iam not sure if your around today but if possible you can come down at 2pm today and I will have around 10 samples that all have 50 to 100 behind them. 1300 to 1350"; and, then, (3) McHugh stated: "no I'm still out of town I won't be back till Saturday James and Chris should be around Friday";

///

6

      o.  A received text message, from May 29, 2019, stating: "1150 or twelve not sure. Bakersfield," which was accompanied by a photograph of what appeared to be numerous marijuana buds and which McHugh responded to with: "How we doing with the happy pills in Lake Tahoe";

      p.  A sent text message, from May 29, 2019, in which McHugh stated to "Sam": "See what you can find we're looking to shop on Friday"; and

      q.  A photograph of a handwritten list, containing terms such as "OG" and "Cherry Pie," listing numerous numerical values ranging from "1200" to "3800" beside those terms, and displaying the larger number of "16,650" at the bottom of the page.

Based on training and experience, investigators believed that the items detailed above indicated that McHugh was engaged in illegal-drugs trafficking up to and during the time of the traffic stop.

Meanwhile, the WCSO officer placed the bag containing the currency along the roadside in the brush. Another WCSO officer, who had not seen where the currency was placed, deployed his certified, reliable canine—trained to detect the odor of illegal drugs. The canine was a different canine than the canine that had been deployed in the vicinity of the Ram. The canine found the bag of currency and alerted to the odor of illegal drugs coming from it.

Also during the traffic stop, a government intelligence analyst advised the WCSO officer that McHugh had been involved in two recent federal currency seizures by Homeland Security Investigations (HSI).

A report from the first HSI seizure indicates that it occurred in Ohio on October 22, 2018. An Ohio State Highway Patrol officer pulled over McHugh, who was driving the Ram, for a traffic violation. McHugh told the officer that the Ram contained no illegal drugs or large amount of currency. Following a positive alert by a drugs canine on the Ram, investigators conducting a probable-cause search of the vehicle uncovered $14,861 in United States currency in banded bundles, a drugs-transaction ledger, and approximately

seventy-two pounds of suspected marijuana, packaged among four duffel bags. As of this filing, the $14,861 has been forfeited from McHugh to the federal government.

A report from the second HSI seizure indicates that it occurred in Ohio on January 11, 2019. A Montgomery County Sheriff's Office officer pulled over McHugh, who was driving a 2018 white Toyota sedan, for a traffic violation. Following a positive alert by a drugs canine on the Toyota, investigators conducting a probable-cause search of the vehicle uncovered a duffel bag containing $28,450 in United States currency and two large empty duffel bags, one black and the other blue. As of this filing, the $28,450 has been forfeited from McHugh to the federal government.

At the conclusion of this traffic stop, the DEA agent seized the currency.

McHugh signed the CSQ, a WCSO Property Receipt, and a DEA Property Receipt. His signatures on those documents matched the signature found on the Les Schwab Tires receipt uncovered during the search of the Ram.

A later official bank count determined that the currency totaled $128,320. The currency was composed of the following:

 r. $890 in $5 bills (178 bills);
 s. $1,960 in $10 bills (196 bills);
 t. $85,120 in $20 bills (4,256 bills);
 u. $8,850 in $50 bills (177 bills); and
 v. $31,500 in $100 bills (315 bills).

The $128,320 in United States currency is the entirety of the defendant currency.

## II. PROCEDURE

On September 13, 2019, the United States filed a verified Complaint for Forfeiture in Rem, ECF No. 1, alleging the $128,320.00 (defendant property):

 a. is all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical in violation of Subchapter I of the Controlled

///

Substances Act, 21 U.S.C. § 801, *et seq.*, and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

b. is all proceeds traceable to all moneys, negotiable instruments, securities, or other things of value traceable to an exchange for a controlled substance or listed chemical in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

c. is all moneys, negotiable instruments, and securities used or intended to be used to facilitate violations of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

On September 17, 2019, the Court entered an Order for Summons and Warrant of Arrest in Rem for the Property and Notice, ECF No. 4, and the Clerk issued the Summons and Warrant of Arrest in Rem, ECF No. 5.

Pursuant to the Order, ECF No. 4, the following documents were served on the defendant property and all persons or entities who may claim an interest in the defendant property: the Complaint, ECF No. 1, the Order, ECF No. 4, the Summons and Warrant, ECF No. 5, and the Notice of Complaint for Forfeiture. Notice was published according to law.

Pursuant to Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (Fed. R. Civ. P. Supp. Rule) G(5), all persons interested in the defendant property were required to: (1) file a verified claim, setting forth the person's or its interest in the property, that (a) identified the specific property claimed, (b) identified the claimant and stated the claimant's interest in the property, and (c) was signed by the claimant under penalty of perjury pursuant to 28 U.S.C. § 1746; (2) file the verified claim with the Clerk of the above-entitled Court no later than 35 days after the notice was sent or, if direct notice was not sent, no later than 60 days after the first day of publication on the official internet government forfeiture site, www.forfeiture.gov; (3) file an answer to the

Complaint for Forfeiture in Rem or a motion under Rule 12 with the Clerk of the Court, Bruce R. Thompson U.S. Courthouse and Federal Building, 400 South Virginia Street, 3rd Floor, Reno, Nevada 89501, no later than 21 days after filing the verified claim; and (4) serve a copy of the verified claim and the answer at the time of each filing on James A. Blum, Assistant United States Attorney, 501 Las Vegas Boulevard South, Suite 1100, Las Vegas, Nevada 89101. Complaint, ECF No. 1; Order for Summons and Warrant, ECF No. 4; Summons and Warrant, ECF No. 5.

On September 25, 2019, the United States Marshals Service served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest by executing them on the defendant property. Notice of Filing Take into Custody, ECF No. 6.

Public notice of the forfeiture action and arrest was given to all persons and entities by publication via the official internet government forfeiture site, www.forfeiture.gov, from September 25, 2019, through October 24, 2019. Notice of Filing Proof of Publication, ECF No. 7.

On December 20, 2019, the United States filed a Settlement Agreement for Entry of Judgment of Forfeiture as to Bradley McHugh, regarding the $128,320. Bradley McHugh waived, among other things, service of process. Settlement Agreement, ECF No. 8.

On December 20, 2019, the United States filed a Settlement Agreement for Entry of Judgment of Forfeiture as to Julie Ann McHugh, regarding the $128,320. Julie Ann McHugh waived, among other things, service of process. Settlement Agreement, ECF No. 9.

On December 23, 2019, the Court entered the Order granting the Settlement Agreement for Entry of Judgment of Forfeiture as to Bradley McHugh and Order. Order Granting Settlement Agreement, ECF No. 10.

///

///

On December 23, 2019, the Court entered the Order granting the Settlement Agreement for Entry of Judgment of Forfeiture as to Julie Ann McHugh and Order. Order Granting Settlement Agreement, ECF No. 11.

No other person or entity has filed a claim, answer, or responsive pleading within the time permitted by 18 U.S.C. § 983(a)(4) and Fed. R. Civ. P. Supp. Rule G(4) and (5).

Bradley McHugh is not in the military service within the purview of the Servicemen's Civil Relief Act of 2003. Exhibit 1.

Julie Ann McHugh is not in the military service within the purview of the Servicemen's Civil Relief Act of 2003. Exhibit 2.

Bradley McHugh is neither a minor nor an incompetent person.

Julie Ann McHugh is neither a minor nor an incompetent person.

On January 21, 2020, the United States filed a Motion for Entry of Clerk's Default against the $128,320, and all persons or entities who may claim an interest in the defendant property in the above-entitled action. Motion for Entry of Clerk's Default, ECF No. 12.

On January 22, 2020, the Clerk of the Court entered a Default against the $128,320, and all persons or entities who may claim an interest in the defendant property in the above-entitled action except Bradley McHugh and Julie Ann McHugh. Entry of Clerk's Default, ECF No. 13.

**III. The Requirements for Default were met.**

   **A. Legal Standard**

Civil forfeiture cases have five requirements that must be fulfilled to complete a default: (1) the judgment sought does not differ in kind from, or exceed in amount, what is demanded in the pleadings pursuant to Fed. R. Civ. P. 54(c); (2) the Clerk of the Court has entered default for a sum certain pursuant to Fed. R. Civ. P. 55(b)(1); (3) publication and personal service were completed pursuant to Fed. R. Civ. P. Supp. Rule G(4); (4) the complaint is legally sufficient to support a reasonable belief that the government will be able to meet its burden of proof pursuant to Fed. R. Civ. P. Supp. Rule G(2), *Alan Neuman Prods., Inc. v. Albright,* 862 F.2d 1388, 1392 (9th Cir. 1988); and (5) no person has filed a

11

claim, or the claim(s) have been resolved under 18 U.S.C. § 983(a)(4)(A) or Fed. R. Civ. P. Supp. Rule G(5).

Civil cases that do not directly address forfeiture have seven factors that the Court must consider before entry of default: (1) the substantive merit of the plaintiff's claims; (2) the sufficiency of the complaint; (3) the amount of money at stake; (4) the possibility of prejudice to the plaintiff if relief is denied; (5) the possibility of disputes to any material facts in the case; (6) whether default resulted from excusable neglect; and (7) the public policy favoring resolution of cases on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986); *SATA GmbH & Co. KG v. USA Italco Int'l Ltd.*, No. 3:18-CV-00351-MMD-WGC, 2019 WL 4601513, at *3 (D. Nev. Sept. 20, 2019); *Covenant Care California, LLC v. Shirk*, No. 217CV00956JADVCF, 2018 WL 3429669, at *1 (D. Nev. July 16, 2018).

For purposes of a default judgment, the well-pled allegations of the complaint are taken as true. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 918 (9th Cir. 1987). Furthermore, upon default, the defendant's liability is conclusively established and the factual allegations in the complaint, except those relating to damages, are accepted as true. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). The power to grant or deny relief upon an application for default judgment is within the discretion of the Court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

**B. The Forfeiture Requirements for Default Were Met.**

a. <u>Judgment Sought</u>

Pursuant to Fed. R. Civ. P. 54(c) and 55(b), the judgment by default does not "differ in kind from, or exceed [the] amount" of relief listed in the Complaint for forfeiture.

b. <u>Default and Entry of Default</u>

As shown above, the United States requested entry of Clerk's Default against the $128,320, and all persons or entities who may claim an interest in the defendant property in the above-entitled action. ECF No. 12. The Clerk entered the Default as requested. ECF No. 13.

///

    c. <u>Notice</u>

Pursuant to Fed. R. Civ. P. Supp. Rule G(4)(a)(iv)(C), the United States published notice via the official internet government forfeiture site, www.forfeiture.gov, for thirty consecutive days. ECF No. 7. Pursuant to Fed. R. Civ. P. Supp. Rule G(4)(b), the United States served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest on all known potential claimants. Notice of Filing Service of Process, ECF No. 6.

    d. <u>Legal Sufficiency of the Complaint</u>

The Complaint filed in this action was verified. The Court has subject matter jurisdiction, in rem jurisdiction over the defendant property, and venue. The Complaint described the property with reasonable particularity. The Complaint states where the seizure of the defendant property occurred and its current location. The Complaint identifies the statute under which the forfeiture action is brought. The Complaint alleges sufficiently detailed facts to support a reasonable belief that the United States will be able to meet its burden of proof at trial. Fed. R. Civ. P. Supp. Rule G(2); Complaint, ECF No. 1.

    e. <u>Status of Potential Claimants</u>

Bradley McHugh has entered into a Settlement Agreement with the United States. Julie Ann McHugh has entered into a Settlement Agreement with the United States. No other person has filed a claim and answer and the time to file such has passed.

**C.  The Civil Requirements for Default Were Met.**

    a. <u>The Plaintiff Would be Prejudiced Without a Judgment</u>

The government would be prejudiced if it were to try this case rather than obtain a default judgment, since a trial would require the additional expenditure of human and financial resources. These expenses and efforts are unnecessary because the Complaint established sufficient evidence of the status and forfeitability of the defendant property, and that evidence is uncontested by Bradley McHugh and Julie Ann McHugh. *See United States v. $150,990.00 in U.S. Currency*, No. 2-12-CV-01014-JAD, 2014 WL 6065815, at *2 (D. Nev.

Nov. 10, 2014), ("[T]he government would be prejudiced by having to expend additional resources litigating an action that appears to be uncontested. This factor favors default judgment.").

### b. & c. The Plaintiff's Claims are Meritorious and the Complaint is Sufficient.

As shown in the statement of the case above, the government has a clear case against the defendant property and the Complaint sufficiently alleges the facts of the case.

### d. The Amount of Money at Stake

The value of the property at stake was clearly established in the Complaint, ECF No. 1, and the property is forfeitable pursuant to 21 U.S.C. § 881(a)(6).

> Under the fourth *Eitel* factor, the court considers the amount of money at stake in relation to the seriousness of Defendants' conduct. Plaintiff has provided evidence that the currency, a sum of $24,000, was furnished or intended to be furnished in exchange for marijuana, a serious violation of federal law.
>
> *United States v. Twenty-Four Thousand Dollars ($24,000) in U.S. Currency*, No. 02:09-CV-2319-LRH, 2010 WL 2695637, at *3 (D. Nev. July 2, 2010) (quotation marks and citation omitted).

The Complaint alleges the serious crime of exchanging or intending to exchange moneys, negotiable instruments, securities, or other things of value for a controlled substance or listed chemical in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq*. The money at stake is the tainted currency related to a completed or contemplated illegal-drugs transaction in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*

### e. There Are No Possible Disputes of Material Fact

No issues of material fact exist and the allegations of the complaint are established as a matter of law. The property is subject to forfeiture because law enforcement can demonstrate that the defendant property:

    a. is all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical in violation of Subchapter I

14

of the Controlled Substances Act, 21 U.S.C. § 801, et seq., and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

 b. is all proceeds traceable to all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. §801, et seq., and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

 c. is all moneys, negotiable instruments, and securities used or intended to be used to facilitate violations of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, et seq., and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

 f. <u>Default Was Not the Result of Excusable Neglect</u>

The record shows that the potential claimants waived service of the Complaint, Order, Summons and Warrant, and the Notice by entering into settlement agreements. There is no evidence of excusable neglect.

 g. <u>Public Policy Does not Prevent Default Judgment</u>

Under Fed. R. Civ. P. 55(b), default judgments are allowed. Here, the potential claimants waived their rights to any civil forfeiture proceedings by entering into a settlement agreement.

> While the Federal Rules do favor decisions on the merits, they also frequently permit termination of cases before the court reaches the merits. As F.R.C.P. 55 indicates, one such instance is when a party fails to defend against an action, which is exactly what [claimants] failed to do in this case. Thus, the preference to decide cases on the merits does not preclude a court from granting default judgment.

*Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996).

///

///

Denying the government's motion would not further public policy. While cases should be decided on the merits when possible, the potential claimants have not contested the facts of the Complaint or the forfeiture of the defendant property, which makes a decision on the merits impractical. Therefore, a final default judgment of forfeiture is appropriate. *See Covenant Care California*, 2018 WL 3429669, at *2.

## IV. Judgment

Based on the foregoing this Court finds that the United States has shown its entitlement to a Default Judgment of Forfeiture as to all persons or entities who may claim an interest in the defendant property and Final Judgment of Forfeiture as to the $128,320, Bradley McHugh, and Julie Ann McHugh.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Default Judgment of Forfeiture is entered all persons or entities who may claim an interest in the defendant property in the above-entitled action.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Final Judgment of Forfeiture is entered against the $128,320.00 in United States Currency, Bradley McHugh, and Julie Ann McHugh.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the defendant property be, and the same is hereby forfeited to the United States of America, and no possessory rights, ownership rights, and no rights, titles, or interests in the property shall exist in any other party.

IT IS HEREBY CERTIFIED, pursuant to 28 U.S.C. § 2465(a)(2), that there was reasonable cause for the seizure or arrest of the defendant property.

_____
HONORABLE MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

DATED: 3/26/2020